UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| SEAD BULJINA, | : | | |
|---|---|---|---|
| Plaintiff, | : | Civil Action No.: | 08-1904 (RMU) |
| v. | : | Document No.: | 23 |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social Security<br>Administration, | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

### GRANTING THE PETITION FOR ATTORNEY'S FEES

## I. INTRODUCTION

This matter comes before the court on a petition for an award of attorney's fees. The petitioner is an attorney who successfully prosecuted his client's claim for disability insurance benefits under the Social Security Act. The attorney has now filed a petition under 42 U.S.C. § 406(b) for an award of $21,609.25 in attorney's fees – a sum that was agreed upon pursuant to a contingency fee agreement. Because the petitioner has shown that the award sought is reasonable, the court grants his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff first applied for disability insurance benefits under Title II of the Social Security Act in October 2005. Commissioner's Response to Pet. ("Response") at 1. The plaintiff was not represented by counsel during the initial administrative phase of this case. *Id.* at 4; Reply at 9. In December 2007, an administrative law judge ("ALJ") then determined that the plaintiff was not entitled to disability benefits. Response at 4. The plaintiff's request for review

was denied at the appellate level of the administrative agency, thus rendering the ALJ's decision final. *Id.*

The plaintiff then hired an attorney on a contingency basis, under which the plaintiff agreed to pay 25% of the plaintiff's past-due benefits in the event that his claim was successful.[1] *Id.*, Ex. B. In 2008, the plaintiff filed suit in this court. *See generally* Compl. Following the filing of the plaintiff's opening brief, the defendant filed a consent motion for voluntary remand. Pet. at 1. This court granted the motion and remanded the case for further proceedings. *Id.* The plaintiff prevailed on remand; an ALJ issued a decision awarding the plaintiff a substantial amount of benefits in February 2011. *Id.* In relevant part, the ALJ awarded the plaintiff $86,437.00 in past-due benefits. *Id.*

In September 2011, the plaintiff's attorney filed a petition for attorney's fees under section 206(b)(1) of the Social Security Act, which is codified at 42 U.S.C. § 406(b).[2] *See generally* Pet. With that petition ripe for review, the court now turns to the relevant legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for an Award of Attorney's Fees Under 42 U.S.C. § 406(b)

Section 406(b) allows the attorney of a successful social security claimant to petition for an award of reasonable attorney's fees. 42 U.S.C. § 406(b)(1)(A). The award is payable out of the claimant's award of past-due benefits, but the award may not exceed a sum greater than 25%

---

[1] "Past-due benefits" is defined to mean "the total amount of benefits payable under Title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or decision . . . ." 20 C.F.R. § 404.1703.

[2] For the sake of clarity, the court will refer to this provision as § 406 to reflect its current position in the United States Code.

of those benefits. *Id.* Section 406(b) requires courts to undertake a "review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). As discussed below, the determination of which factors indicate a "reasonable" award in any particular case requires further analysis.

In *Gisbrecht v. Barnhart*, the Supreme Court set forth the framework that governs judicial review of petitions for attorney's fees under § 406(b). *See generally id.* By way of background, *Gisbrecht* observed that many civil rights statutes include a "fee-shifting" provision, which requires a losing defendant to pay for the winner's attorney's fees and costs. *See, e.g.*, 42 U.S.C. § 1988 (allowing reasonable attorney's fees in cases brought under various Reconstruction-era civil rights statutes); 42 U.S.C. § 2000e-5(g)(2)(A) (allowing courts to award attorney's fees and costs under Title VII of the Civil Rights Act of 1964). These fee-shifting provisions are intended to encourage private individuals and their attorneys to bring lawbreakers to account and thus secure broad compliance with this nation's civil rights laws. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401 (1968). The typical method of calculating an award of attorney's fees under these statutes is known as the "lodestar" method, under which a court is asked to multiply the number of hours expended in the litigation by a reasonable hourly billing rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Section 406(b) is of a different ilk. This provision does not require the losing party to pay the winner's attorney's fees. *Gisbrecht*, 535 U.S. at 802. Rather, § 406(b) authorizes the attorney of a successful claimant to recover directly from her client. 535 U.S. at 802 & n.12. Because § 406(b) is not a fee-shifting statute *per se*, *Gisbrecht* concluded that the "lodestar" analysis is not the primary method of calculating awards of attorney's fees under the Social Security Act. *Id.*

3

In contrast, *Gisbrecht* noted that Social Security claimants most commonly hire attorneys on a contingency basis. *Id.* Under a typical contingency fee arrangement, the plaintiff contracts with her attorney such that the attorney may recover some percentage of the proceeds in the event that the litigation is successful. *Id.* at 803. One feature of such arrangements is that they often allow plaintiffs' lawyers to recover a sum that far exceeds the amount they would have received if they had charged an hourly rate. Attorneys who accept payment on a contingent basis reap these rewards because they "tak[e] upon themselves the risk that they will receive no payment at all," thus reflecting the high rate of return that accompanies a high-risk investment. *Hensley*, 461 U.S. at 448 (Burger, C.J., concurring); *see City of Burlington v. Dague*, 505 U.S. 557, 571 (1992) ("An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not."). Although contingency fees drew criticism in early American jurisprudence,[3] courts have come to recognize that these fee arrangements permit attorneys to provide legal representation to plaintiffs who could not otherwise afford their day in court. *See, e.g.*, *Leonard C. Arnold, Ltd. v. N. Trust Co.*, 506 N.E. 2d 1279, 1281 (Ill. 1987) ("[Contingency fee] agreements are the poor man's key to the courthouse door: they enable persons who cannot afford to retain an attorney on an hourly or fixed-fee basis to pursue their claims with competent counsel.") (quotation omitted).

Against this backdrop, *Gisbrecht* held that contingency fee arrangements are permissible under § 406(b). *Gisbrecht* nevertheless affirmed that courts still play a vital role in adjudicating such fee awards, holding that § 406(b) "calls for court review of such arrangements as an

---

[3] *See, e.g., Butler v. Legro*, 62 N.H. 350, 352 (1882) ("Agreements of this kind are contrary to public justice and professional duty, tend to extortion and fraud, and are champertous and void.").

4

independent check" to ensure that they do not yield a "windfall" to the plaintiff's attorney. *Id.* at 807 & n.17.

The *Gisbrecht* Court left open which factors should guide a district court's analysis when reviewing a petition for attorney's fees.[4] *Id.* It made reference to a few potential guideposts, however. For example, a court may order a reduced fee if the representation is substandard, if the attorney is responsible for delay or if the benefits are disproportionately large when compared to the amount of time that the attorney spent on the case. *Id.* at 808. Perhaps most saliently, the Court overruled those cases which had consulted the lodestar method as the exclusive manner of calculating a reasonable amount for an award. *Id.* at 806.

Following *Gisbrecht*, district and circuit courts alike have endeavored to assemble a list of factors that might guide a district court's discretion when determining the "reasonableness" of a contingency fee. *See, e.g.*, *Hearn v. Barnhart*, 262 F. Supp. 2d 1033, 1036-38 (N.D. Cal. 2003) (considering the risk of litigation loss, the experience of counsel, the percentage of funds the fee consumes, the value of the case to the plaintiff and the client's consent to the fee requested); *Coppett v. Barnhart*, 242 F. Supp. 2d 1380, 1393-85 (S.D. Ga. 2002) (considering the risk of loss, the difficulty of the case and the skill or experience of the attorney). Their efforts have not yielded one composite or comprehensive list of factors. Rather, these cases affirm two propositions: (1) the authority to determine which contingency fees are "reasonable" is vested in

---

[4] The extent to which the Court left this question open has been grounds for criticism. *See* 535 U.S. at 809 (Scalia, J., dissenting) ("I do not know what the judges of our district courts and courts of appeals are to make of today's opinion . . . While today's opinion gets this case out of our "in" box, it does nothing whatever to subject these fees to anything approximating a uniform rule of law."). Although *Gisbrecht* did not set forth a definitive inventory of factors to consider, courts have traditionally exercised a "wary supervision" over contingency fee arrangements and have scrutinized their terms. *Gair v. Peck*, 6 N.Y. 2d 97, 106 (1959); *see also Pocius v. Halvorsen*, 30 Ill. 2d 73, 83 (1964) ("A contingent fee is always subject to the supervision of the court as to its reasonableness."); *Tonn v. Reuter*, 6 Wis. 2d 498, 504 (1959) (same).

the discretion of the district court; and (2) the district court's discretion is to be guided by the facts of each particular case. *See, e.g.*, *Jeter v. Astrue*, 622 F.3d 371, 381 (5th Cir. 2010) (concluding that "district courts are in a better position to determine what factors are relevant in considering whether the success of a claimant's claim" and thus refraining from "forcing our lower courts into applying an arbitrary, formulaic set of factors of our own making"); *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005) ("[*Gisbrecht*] did not provide a definitive list of factors to be considered because it recognized that the judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts." (quotation and alterations omitted)).

### B. The Court Grants the Petition for Attorney's Fees

The petitioner seeks 25% of past-due benefits pursuant to the contingency agreement that the plaintiff entered into with his counsel. Pet. at 2; *id.*, Ex. B. The parties agree that the claimant here is entitled to $86,437.00 in past-due benefits. *Id.* The petitioner argues that this fee request is reasonable in light of the "excellent results" of his legal representation. *Id.* at 2.

In response, the Commissioner "takes no position with regard to the reasonableness of this amount." Response at 3. Rather, the Commissioner asks the court to "independently check" the reasonableness of the fee. *Id.* More specifically, the Commissioner notes that calculation of the hourly rate would yield reimbursement at a rate of approximately $573 per hour and suggests – albeit obliquely – that this hourly rate "is not unquestionably reasonable." *Id.*

No evidence before the court suggests that the contingency fee sought here would yield an unjustified windfall to the petitioner. The plaintiff had suffered several legal setbacks in pursuit of his claim before retaining the petitioner, who then succeeded in persuading an ALJ to award his client a substantial sum of money. Pet. at 2; Response at 3. There is no evidence

suggesting that the quality of the petitioner's representation was insufficient. *Cf. Gisbrecht*, 535 at 808. Moreover, no evidence indicates that the petitioner caused any undue delay in pursuing the claim or that the award sought here would dwarf the number of hours the petitioner spent on the case. *Cf. id.* In addition, there is no evidence of "fraud or overreaching" in the formation of the contingency fee agreement. *Cf. Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009); *Gisbrecht*, 535 at 812 (Scalia, J., dissenting) (warning courts to scrutinize contingency fees that are presented to "the typically unsophisticated client on a take-it-or-leave-it basis"). Finally, the court's independent review of the filings indicate that the plaintiffs' counsel prosecuted this case in a timely, efficient and effective manner. *See generally* Pet., Exs. A-B.

The only objection raised against the petition is the Commissioner's veiled suggestion that calculation of the lodestar figure would yield a lower award of attorney's fees.[5] Response at 3. *Gisbrecht* and later cases make clear, however, that calculation of the hourly rate must not provide the sole basis for adjudicating a petition for attorney's fees when the attorney is retained on a contingency basis. *See Crawford v. Astrue*, 586 F.3d at 1150-51 (reversing the district court because it determined the reasonableness of an attorney's fee solely by measuring its distance from the lodestar amount). Of course, the lodestar amount may be considered in addition to other factors which indicate that the contingency fee would allow an unjustified windfall to the petitioner. *See Gisbrecht*, 535 U.S. at 809; *Jeter v. Astrue*, 622 F.3d at 1152-53. No such factors are present here.

---

[5] The Commissioner also objects on the basis that several of the hours billed represent those of the petitioner's law clerk. Response at 3. This objection has little merit; the "law clerk" here is a licensed attorney (an honors graduate from Loyola University of Chicago School of Law, no less) who has several years of relevant work experience. Reply at 3.

In sum, the court has reviewed the petitioner's filings and concludes that application of the 25% contingency is reasonable in this case. Accordingly, the court grants the petition for an award of $21,609.25 in attorney's fees.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the petition for an award of attorney's fees. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 8th day of December, 2011.

                   RICARDO M. URBINA
                   United States District Judge